[No. 47666-1-I. Division One. July 15, 2002.]

DONALD P. VAN BLARICOM, ET AL., *Appellants*, v. DONALD B. KRONENBERG, ET AL., *Respondents*.

502

*Elena L. Garella*; and *Arnold J. Barer* (of *Law Offices of Arnold J. Barer*), for appellants.

*Anne M. Bremner* and *Theron A. Buck* (of *Stafford Frey Cooper*), for respondents.

SCHINDLER, J. — This case raises the issue of whether an attorney who uses RCW 6.25.070(2) to obtain a prejudgment writ of attachment on real property without prior notice or hearing and in the absence of exigent circumstances may be liable under 42 U.S.C. § 1983. We hold there may be such liability.

Attorney Donald Kronenberg represented Theresa Obermiller in a lawsuit against Donald Van Blaricom alleging he had assaulted her when she was a teenager.[1] Shortly after he filed the suit, Kronenberg obtained ex parte prejudgment writs of attachment on the Van Blaricoms' property. These writs were discharged before trial. At the conclusion of Obermiller's case, the lawsuit was dismissed. Donald Van Blaricom and his spouse Janice Van Blaricom (the Van Blaricoms) then sued Kronenberg. The trial court dismissed most of the Van Blaricoms' claims on summary judgment and they appeal.[2] We conclude that the Van Blaricoms have alleged facts sufficient to warrant a trial on two claims, violation of due process under 42 U.S.C. § 1983 and abuse of process. We reverse the summary judgment order with respect to these claims and remand for trial.

[1] The relationship between Van Blaricom and Obermiller is disputed. Obermiller claims that she is Donald Van Blaricom's daughter, which Van Blaricom denies.

[2] Based on RAP 10.1(h), we decline to consider Kronenberg's arguments on appeal submitted in his supplemental brief. We have, however, considered the additional authority submitted by the parties pursuant to RAP 10.8.

Summary judgment is affirmed with respect to the Van Blaricoms' claims for defamation, invasion of privacy, false light, malicious prosecution, duress and coercion.[3] We also affirm the trial court's rulings on the motion to compel, the motion to strike, and the motion for reconsideration.

The trial court dismissed Obermiller's lawsuit at the conclusion of the plaintiff's case because there was no expert testimony establishing causation. Donald Van Blaricom and Obermiller entered into an agreement in which Obermiller released Van Blaricom from any further claims and waived her right to appeal the trial court's dismissal of her case. In exchange, Van Blaricom released Obermiller and third party defendant RLI Insurance from a claim of defamation and from all other counterclaims including specifically his right to recover damages for wrongful prejudgment attachment of his property.[4] The trial court entered a Stipulation, Release, and Order of Dismissal of Obermiller's lawsuit on December 8, 1997.

In 1999, the Van Blaricoms filed this suit against Obermiller's attorney, Donald Kronenberg. The Van Blaricoms claimed wrongful attachment and deprivation of due process based on the ex parte prejudgment attachment of their property. They also alleged coercion, invasion of privacy, defamation, false light, malicious prosecution, abuse of process, outrage, and negligent infliction of emotional distress. Donald Van Blaricom is a former chief of the Bellevue Police Department and a former Bellevue City Council member. He currently works as an expert witness. The Van Blaricoms contend Kronenberg engaged in an unethical litigation strategy of publicizing Obermiller's allegations in an effort to damage his professional reputation as a means of forcing him into a settlement of

---

[3] This decision does not affect the plaintiffs' outstanding claims for negligent and intentional infliction of emotional distress which were not dismissed on summary judgment. *See* Stipulation and Order of Dismissal of Non-Determined Claims. Clerk's Papers (CP) at 1067.

[4] Although the record establishes that Janice Van Blaricom had an ownership interest in part of the property attached, the release pertained only to Donald Van Blaricom and Obermiller.

Obermiller's case. Kronenberg moved for summary judgment on all claims except for the claims of negligent and intentional infliction of emotional distress. The Van Blaricoms also moved for summary judgment on the due process claim. The trial court granted Kronenberg's motion and this appeal followed.

The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). The court considers the facts and the inferences from the facts in the light most favorable to the nonmoving party. *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230, 15 P.3d 688 (2001). The court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lybbert*, 141 Wn.2d at 34.

## SECTION 1983 DUE PROCESS CLAIM

The complaint in the Obermiller lawsuit was filed on June 27, 1996. Approximately one month later, on July 24, 1996, Kronenberg, relying on RCW 6.25.070(2),[5] filed a motion for issuance of a writ of attachment on two parcels of real property owned by the Van Blaricoms.[6] The Van Blaricoms were not served with the complaint and did not receive notice of the lawsuit or the writs until after the writs had been issued.

---

[5] RCW 6.25.070(2) provides, in relevant part:

[T]he court shall issue the writ without prior notice to the defendant and an opportunity for a prior hearing only if:

 (a)(i) The attachment is to be levied only on real property, . . . and

 (b) the court finds, on the basis of specific facts alleged in the affidavit, after an ex parte hearing, that there is probable cause to believe the allegations of plaintiff's affidavit.

[6] The purpose of the statutory writ procedure is to secure collateral to ensure assets are available to satisfy a judgment. RCW 6.25.020.

The motion for issuance of the writs was based on RCW 6.25.030(9), which provides that a writ of attachment may be issued if "the damages for which the action is brought" are for injuries arising from the commission of a crime. In support of the motion for a writ of attachment, Kronenberg submitted Obermiller's declaration alleging that Van Blaricom assaulted her and that her damages were more than the value of the properties. Obermiller posted the minimum bond of $3,000 on the Van Blaricoms' property which was worth in excess of $500,000. On August 6, 1996, a superior court commissioner ordered the issuance of writs of attachment on the Van Blaricoms' properties.

The Van Blaricoms asserted their right under RCW 6.25.070(3) to an early postattachment hearing and challenged the issuance of the writs.[7] On March 25, 1997 the trial court partially vacated the writ with respect to the Bellevue property on the ground that, as to community property, the writ was issued without legal basis. The trial court scheduled a hearing to determine the probable validity of the plaintiff's claim. At the conclusion of this evidentiary hearing, the trial court discharged the writ on Donald Van Blaricom's separate property, finding that Obermiller had not established the probable validity of her claims.[8] The order specifically reserved ruling on the Van Blaricoms' claim for wrongful attachment. This court denied discretionary review of the trial court's order discharging the writs of attachment.

The Van Blaricoms allege that Kronenberg, in obtaining the prejudgment writs of attachment, is liable under 42 U.S.C. § 1983 because he knew or should have known that,

---

[7] RCW 6.25.070(3) states, in relevant part:

If a writ is issued under subsection (2) of this section without prior notice to defendant, after seizure of property under the writ the defendant shall be entitled to prompt notice of the seizure and of a right to an early hearing, if requested, at which the plaintiff shall establish the probable validity of the claim sued on and that there is probable cause to believe that the alleged ground for attachment exists.

[8] In determining probable validity, the court evaluates the chances of the plaintiff prevailing at trial. RCW 6.25.070(3); *Rogoski v. Hammond*, 9 Wn. App. 500, 507, 513 P.2d 285 (1973).

absent exigent circumstances, writs of attachment on real property without prior notice and an opportunity to be heard violate their due process rights.[9] The trial court granted Kronenberg's motion for summary judgment on this claim concluding that the ex parte prejudgment attachment procedure was warranted by then-existing law.[10]

■ ■ As an initial matter, Kronenberg asserts that Donald Van Blaricom's release of his client, Obermiller, precludes any claim against him based on the prejudgment writs of attachment. An agreement to release a specific person generally releases only that person. *See* RCW 4.22.060(2) ("A release . . . or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides."). Our case law demonstrates that under certain circumstances, an attorney may be liable to a third party for acts undertaken in the course of legal representation, when those acts amount to tortious conduct. *See Fite v. Lee*, 11 Wn. App. 21, 521 P.2d 964 (1974) (attorney could be held separately liable for the use of writs of garnishment when the use of those procedures constituted an abuse of process). Kronenberg has not established any basis for concluding that Donald Van Blaricom's release of claims against Obermiller precludes suing him.

As to the merits of the due process claim, there is a considerable amount of federal jurisprudence addressing the constitutional requirements for attachment, garnishment and replevin statutes and potential liability under 42 U.S.C. § 1983 where procedures used to attach or seize property are constitutionally insufficient.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes states from depriving any person of "life, liberty, or property, without due

---

[9] In their complaint the Van Blaricoms assert claims for both wrongful attachment and violation of § 1983, but they make no argument on appeal with respect to wrongful attachment.

[10] CP at 748.

process of law." U.S. CONST. amend. XIV, § 1. Congress created a civil action for deprivation of rights, 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Under 42 U.S.C. § 1983, a plaintiff must establish that a federally protected constitutional or statutory right has been violated by state action or persons acting under color of state law. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990); *Torrey v. City of Tukwila*, 76 Wn. App. 32, 37, 882 P.2d 799 (1994).

■ The United States Supreme Court has addressed the constitutional due process requirements with respect to seizures of property in several cases and has held that the statutory procedures for attachment of property are subject to the due process requirements of the Fourteenth Amendment. *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974). Due process requires, at a minimum, that deprivation of property be preceded by notice and opportunity for a hearing appropriate to the case. *Mullane v. Hanover Cent. Bank & Trust*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983).

There are three Supreme Court cases that provide the analytical framework for prejudgment writs of attachment obtained without notice and hearing in the absence of exigent circumstances: *Lugar v. Edmondson Oil Co.*, 457

U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982); *Connecticut v. Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991); *Wyatt v. Cole*, 504 U.S. 158, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992).

 In *Lugar*, the Supreme Court held that private parties who invoke a state attachment statute that was constitutionally deficient may be potentially liable under § 1983 if their actions are "fairly attributable" to the state. *Lugar*, 457 U.S. at 937. When determining whether a private party invoking state procedure acts "under color of state law" for § 1983 purposes, the *Lugar* Court established a two-part test: (1) the deprivation must be caused by the exercise of some right or privilege created by the state, and (2) the private party has acted together with or obtained significant aid from state officials. *Lugar*, 457 U.S. at 937. Seizing property pursuant to a state-created procedure is sufficient to meet the first part of the test. *Lugar*, 457 U.S. at 941. A "private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor.' " *Lugar*, 457 U.S. at 941. The Court found potential § 1983 liability in *Lugar* because the attachment scheme was created by the State and the private defendants invoked the aid of state officials to attach the property.[11]

The Supreme Court addressed the constitutional requirements of prejudgment attachment procedures again in *Doehr*, 501 U.S. 1. In *Doehr*, the Court analyzed Connecticut's prejudgment attachment statute and held that the statute violated the Due Process clause because it failed to require either a preattachment hearing or a showing of exigent circumstances. *Doehr*, 501 U.S. at 18. In *Doehr*, the plaintiff, DiGiovanni, applied to the Connecticut court for prejudgment attachment of Doehr's residence because of his civil action for assault and battery against Doehr. The

---

[11] Subsequent cases have required a low threshold for establishing state action where ex parte prejudgment attachment proceedings are concerned. *Wyatt v. Cole*, 994 F.2d 1113, 1117 (5th Cir. 1993); *Davis Oil Co. v. Mills*, 873 F.2d 774, 779 (5th Cir. 1989).

court ordered the attachment based on DiGiovanni's decla-
ration that Doehr assaulted him and that the assault
resulted in certain injuries and medical expenditures. The
Connecticut statute allowed for ex parte attachment of real
property without prior notice or opportunity for a prior
hearing and without a bond requirement. The statute
required only " 'verification by oath of the plaintiff or of
some competent affiant, that there is probable cause to
sustain the validity of the plaintiff's claims.' " *Doehr*, 501
U.S. at 5 (quoting CONN. GEN. STAT. § 52-278e (1991)).

The Court analyzed Connecticut's statutory procedure
under the three-part due process analysis of *Mathews v.
Eldridge*, 424 U.S. 319, 343-44, 96 S. Ct. 893, 47 L. Ed. 2d
18 (1976) and examined (1) the private interest affected by
the official action, (2) the risk of erroneous deprivation of
such interest that will be affected by the official action, and
(3) the government's interest in the procedure used. The
Court concluded the private property interest was signifi-
cant, the risk of erroneous deprivation was substantial, and
the interests in favor of the ex parte procedure were
minimal. The Court held that absent exigent circum-
stances, the interests in allowing attachment of real prop-
erty did not justify the burden on property rights without a
prior hearing. The Court compared Connecticut's statute to
other states' statutes and noted that nearly every other
statute required either a preattachment hearing or a show-
ing of exigent circumstances or both before allowing prop-
erty to be attached. *Doehr*, 501 U.S. at 17. Only two other
states' statutes, including Washington's, authorize ex parte
prejudgment attachment of real property without any
showing of exigent circumstances. *Doehr*, 501 U.S. at 18.
Washington's statute is identical to Connecticut's, except it
contains a bond requirement.[12] While the Court's analysis
suggested that Washington's statute also was unconstitu-

---

[12] Four concurring Justices in *Doehr* concluded that a bond requirement would
not have cured the constitutional deficiencies of Connecticut's prejudgment
statute. *Doehr*, 501 U.S. at 23 (White, J., concurring).

tional, the decision did not invalidate any statute other than Connecticut's. *Doehr*, 501 U.S. at 18.

*Wyatt v. Cole*, 504 U.S. 158, involved a dispute surrounding the dissolution of a partnership between Cole and Wyatt. Cole's attorney obtained a replevin bond to seize Wyatt's property, and Wyatt sued Cole and his attorney. The Court applied the *Lugar* test and concluded that Cole's and his attorney's actions constituted "state action" for purposes of the Fourteenth Amendment. *Wyatt*, 504 U.S. at 162 (quoting *Lugar*, 457 U.S. at 937). The court below had decided that even if Wyatt and his attorney acted under color of law, they were entitled to qualified immunity from suit because they relied on the statute prior to its invalidation. The Supreme Court reversed and held that private parties who invoke state replevin, garnishment or attachment statutes that are later declared unconstitutional are not entitled to either immunity or qualified immunity from suit. *Wyatt*, 504 U.S. at 168-69.

In *Tri-State Development, Ltd. v. Johnston*, 160 F.3d 528 (9th Cir. 1998), the Ninth Circuit addressed Washington's prejudgment attachment statute. In *Tri-State*, the plaintiffs filed suit alleging breach of contract and breach of the implied warranty of habitability. In conjunction with this suit, the plaintiffs obtained an ex parte writ of attachment on the defendant's real property under RCW 6.25.070(2). The defendant did not receive notice of the complaint or the attachment until after the writ had been issued.

The *Tri-State* court compared Washington's statute to the Connecticut statute invalidated in *Doehr*. Like Connecticut's statute, RCW 6.25.070(2) authorizes the court to attach real property without prior notice to the defendant or a hearing, and also only requires a finding of "probable cause to believe the allegations of plaintiff's affidavit." And, as with the Connecticut statute, to attach real property, Washington's statute requires no showing of extraordinary circumstances, such as an allegation that the defendant is about to transfer or encumber the property. RCW 6.25.070(2)(a)(ii). And similar to Connecticut's statute,

when a prejudgment writ is issued without notice, the defendant is entitled to an early hearing at which the plaintiff must establish the probable validity of her claim. RCW 6.25.070(3). The *Tri-State* court concluded that Washington's statute was "virtually indistinguishable" from the Connecticut statute. *Tri-State*, 160 F.3d at 530. The only difference is Washington's bond requirement, which the court, agreeing with the concurring Justices in *Doehr*, found did not cure the statute's constitutional deficiencies. *Tri-State*, 160 F.3d at 532. Thus, the court held that RCW 6.25.070, which allows for prejudgment attachment of real property in Washington without prior notice and a hearing, violates the due process clause of the Fourteenth Amendment in the absence of exigent circumstances. *Tri-State*, 160 F.3d at 534.

Relying on *Tri-State* and the preceding cases, the Van Blaricoms contend that they have established a case for liability under § 1983 because Kronenberg employed an unconstitutional procedure to attach their property, and thus deprived them of their right to due process. The Van Blaricoms ask us to reverse the order of summary judgment granted in favor of Kronenberg and grant their motion for partial summary judgment on this issue.

Kronenberg contends that even if the attachment violated the Van Blaricoms' rights, the attachment statute provides the exclusive remedy. While it is true that RCW 6.25.100 provides for actual damages for wrongful attachment, Kronenberg cites no authority, and we are not aware of any, that supports his position that this is the Van Blaricoms' exclusive remedy. Indeed, *Wyatt* suggests the contrary since the plaintiff in that case sought relief in a postseizure hearing and also subsequently filed a § 1983 claim in federal court. *See Wyatt*, 504 U.S. at 160.

Kronenberg's primary argument is that he cannot be liable because his actions were warranted by then-existing law, and no court had declared Washington's attachment statute unconstitutional at the time he obtained the

writs.[13] While the Van Blaricoms acknowledge that chapter 6.25 RCW permitted Kronenberg's actions at the time, they claim that Kronenberg knew or should have known that the ex parte prejudgment writ of attachment procedure he used violated their due process rights. Kronenberg is correct that the Washington prejudgment writ of attachment statute has not been successfully challenged on appeal in Washington. We now adopt the holding of the Ninth Circuit in *Tri-State* and hold that the prejudgment attachment of real property without prior notice and a hearing violates the due process clause of the Fourteenth Amendment in the absence of exigent circumstances. The parties agree there were no exigent circumstances set forth in the request for the ex parte prejudgment writs of attachment in this case.

■ Nonetheless, a prior declaration of unconstitutionality is not a condition for § 1983 liability. For instance, the court in *Tri-State* found a cognizable action for § 1983 liability based on the use of Washington's prejudgment writ of attachment statute even though the statute had not been declared unconstitutional at the time the defendants used it. Similarly, in *Wyatt*, the court considered a claim for § 1983 liability based on the use of a Mississippi replevin statute even though the plaintiffs relied on a statute which had not yet been declared unconstitutional. These courts could not have upheld a cause of action under § 1983 if a prior declaration of unconstitutionality were a prerequisite to liability.

■ In addition, the Court in *Lugar* and *Wyatt* squarely acknowledged the potentially unfair result for private parties who innocently rely on presumptively valid state laws. In *Lugar* the Court expressed concern that "private individuals who innocently make use of seemingly valid state laws would be responsible, if the law is subsequently held to be unconstitutional, for the consequences of their actions"

---

[13] Kronenberg also claims that the attachment was lawful, citing *Keene v. Edie*, 131 Wn.2d 822, 834-35, 935 P.2d 588 (1997). But *Keene* is not relevant to the issue of whether Washington's attachment procedure is constitutional or to the issue of liability under § 1983.

but concluded that "this problem should be dealt with not by changing the character of the cause of action, but by establishing an affirmative defense." *Lugar*, 457 U.S. at 942 n.23. The *Wyatt* Court explained that in holding that qualified immunity was unavailable, the Court did not "foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith" or that plaintiffs suing private parties could be required to carry additional burdens. *Wyatt*, 504 U.S. at 169. This concern can arise only because the law permits liability based on actions taken on the authority of state laws that have not been declared unconstitutional at the time the defendant uses them.

We reverse summary judgment with respect to the Van Blaricoms' 42 U.S.C. § 1983 claim. Summary judgment in favor of the Van Blaricoms on their motion for partial summary judgment is not appropriate based on the record before the trial court. It appears from the federal case law since *Wyatt*, that in addition to proving their due process rights were violated, the Van Blaricoms must demonstrate that Kronenberg knew or should have known Washington's ex parte prejudgment writ of attachment procedure for real property was unconstitutional.[14] Attorney fees to the pre-

---

[14] The contours of this cause of action were not fully briefed or argued by the parties before the trial court or on appeal. However, in order to provide some guidance to the trial court on remand, we are obliged to point out that federal cases since *Wyatt* have held that a private defendant shall not be liable under § 1983 absent a showing that he either knew or should have known the statute was unconstitutional and violated plaintiff's rights. *Wyatt v. Cole*, 994 F.2d 1113, 1120 (5th Cir. 1993); *Jordan v. Fox, Rothschild O'Brien & Frankel*, 20 F.3d 1250, 1276 (3d Cir. 1994); *Franklin v. Fox*, No. C 97-2443 CRB, 2000 U.S. Dist. LEXIS 19651, at *17, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (mem.); *Egervavry v. Rooney*, No. CIV.A. 96-3039, 2000 U.S. Dist. LEXIS 11654, 2000 WL 1160720 (E.D. Pa. Aug. 15, 2000) (mem.). The weight of authority places the burden of proof on the plaintiff. *See Wyatt*, 994 F.2d at 1119; *see also Jordan*, 20 F.3d at 1276; *cf. Robinson v. City of San Bernardino Police Dep't*, 992 F. Supp. 1198, 1207 (C.D. Cal. 1998). Since *Wyatt*, some courts have also suggested the availability of a good faith defense and additional burdens, such as proof of malice and lack of probable cause. But there is no unanimity as to the nature of this good faith defense or the additional burdens. *Wyatt*, 994 F.3d at 1119-21; *Jordan*, 20 F.3d at 1276; *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996); *Pinsky v. Duncan*, 79 F.3d 306, 312 (2d. Cir. 1996).

vailing party under 42 U.S.C. § 1988(b) will abide by the outcome in the trial court.

The panel having determined that the remainder of this opinion lacks precedential value, it will not be published in the Washington Appellate Reports but will be filed of public record as provided in RCW 2.06.040.

BECKER, C.J., and KENNEDY, J., concur.

The fact that Kronenberg did not raise an affirmative defense of good faith appears to be irrelevant because the plaintiffs have to prove that the defendant knew or should have known the statute was unconstitutional. Therefore, Kronenberg will be able to challenge the plaintiff's proof by offering evidence of his good faith. Moreover, it would be inequitable to preclude Kronenberg from defending against this claim because of his failure to raise this defense in his pleadings when no Washington court has previously recognized a § 1983 claim based on obtaining an ex parte prejudgment writ of attachment on real property in the absence of exigent circumstances.